ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Chris L. Bowman, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Respondent and his wife, Carol Dreyfus, were married for eighteen years before they were divorced on October 5, 2004. The couple had a son, then age fourteen, and two daughters, who were ages twelve and eight at the time of the divorce. Respondent and Ms. Dreyfus shared physical custody of the children on a rotating weekly schedule pursuant to an interim custody order rendered by the trial court in July 2004.
In the early evening on October 15, 2004, respondent telephoned Ms. Dreyfus to advise her that he would soon be arriving at their former matrimonial domicile in Ruston to pick up his two daughters for visitation.[1] Ms. Dreyfus informed respondent that he was welcome to pick up the older daughter, but that the younger daughter did not want to go with him and that she would not force her to go. Respondent became angry when he heard this; he reminded Ms. Dreyfus |2that he had a court order to get his girls and said he would be over in about half an hour to pick them up.
When respondent arrived at the house, he knocked on the front door and Ms. Dreyfus opened it in response. Respondent told Ms. Dreyfus that he was “here to get the kids.” Ms. Dreyfus again informed respondent that the youngest child was not going with him, and respondent said she was. Respondent then pushed past Ms. Dreyfus in an attempt to enter the house. As Ms. Dreyfus closed the front door to prevent respondent from en *319 tering, respondent pushed her with his arm, causing her to stumble backwards against the door. He then pinned her against the door by placing his forearm against her throat and chest. He also drew back his left hand in a fist as though he was going to punch Ms. Dreyfus; however, he did not actually strike her with his fist. Respondent then yelled into the house for his two daughters to come with him.
At this point in the altercation, Ms. Dreyfus’s boyfriend, David Bryant, appeared on the scene. Mr. Bryant, then employed as a Louisiana State Trooper, had been at Ms. Dreyfus’s home that evening to have dinner with her. When he heard screaming from the front of the house, he came to the door, grabbed respondent’s arm, and maneuvered him out of the home and onto the front porch. After Mr. Bryant and respondent exchanged words on the porch, respondent left the residence to return to his home a few blocks away.
In response to a 911 call placed by the older daughter, the Ruston Police Department located respondent for questioning. Respondent admitted to the police that he had “kind of pushed” Ms. Dreyfus “a little bit,” but he denied that he had hit her. Officers then proceeded to the former matrimonial domicile and found that Ms. Dreyfus had visible red marks and abrasions on her neck and chest from being Rpushed into the door.[2] Officers also questioned the older daughter, who reported that she had seen her father pin her mother against the front door with his arm. Respondent was placed under arrest and charged with domestic abuse battery. On October 27, 2004, the Lincoln Parish District Attorney’s Office filed a bill of information charging respondent with one count of domestic abuse battery, a misdemeanor violation of La. R.S. 14:35.3(A).
In February 2005, in connection with the settlement of the domestic litigation between respondent and Ms. Dreyfus, Ms. Dreyfus agreed to request that the criminal charge against respondent be dismissed. Ms. Dreyfus did so; however, the district attorney’s office declined to forego the criminal prosecution. The Lincoln Parish District Attorney’s Office subsequently recused itself from the criminal case and referred the matter to the Louisiana Attorney General’s Office.
In July 2008, the case was tried as a bench trial by Judge ad hoc James Boddie, Jr. Following the trial, Judge Boddie found respondent guilty as charged. In oral reasons for judgment, Judge Boddie commented that even though Ms. Dreyfus’s actions on the day in question constituted a willful disobedience of a custody order and actually triggered the heated exchange and ultimately the very incident in question, she was not the aggressor or instigator in the altercation. He continued:
Although Carol Dreyfus Bowman engaged in a pattern of conduct guaranteed to cause her ex-husband distress, there is absolutely no proof of any legal justification for Chris Bowman’s intentional use [of] force upon her person without her consent. Even considering that there may well be some minor discrepancies in the trial testimony and evidence, nothing has created a reasonable doubt regarding Chris Bowman’s guilt.... [A] volatile situation occurred, matters got out of hand, and Chris Bowman intentionally used force *320 as described upon the person of Carol Dreyfus Bowman without her consent. The Court has concluded that the State has proved every |4element of the crime charged beyond a reasonable doubt. Therefore, Chris Lane Bowman is found guilty as charged.
Judge Boddie sentenced respondent to pay a $500 fíne and all court costs and to serve sixty days in jail. Pursuant to the provisions of La.Code Crim. P. art. 894, Judge Boddie suspended the jail sentence and placed respondent on supervised probation for a period not to exceed six months with special conditions, including the requirement that respondent perform four eight-hour days of community service work and attend and complete a court-approved domestic abuse prevention program.[3]
Respondent subsequently completed the terms of his probation in a satisfactory manner. In October 2008, Judge Boddie set aside respondent’s conviction and dismissed the prosecution in accordance with La.Code Crim. P. art. 894(B).
DISCIPLINARY PROCEEDINGS
In January 2005, Mr. Bryant filed a complaint against respondent with the ODC.[4] In his response, respondent characterized the complaint as “frivolous, and nothing more than an ex-wife’s boyfriend whining and complaining.” The ODC then stayed any further consideration of the matter pending the outcome of respondent’s criminal trial.
In September 2008, following respondent’s criminal conviction, the ODC filed a petition for interim suspension in this court. On October 8, 2008, we |fideclined to impose an interim suspension. In re: Bowman, 08-2173 (La.10/3/08), 992 So.2d 1000.
In November 2010, the ODC filed one count of formal charges against respondent, alleging that by his actions as set forth above he has committed a criminal act in violation of Rule 8.4(b) of the Rules of Professional Conduct. Respondent answered the formal charges and maintained his innocence of the criminal conduct of which he was convicted. Respondent also denied that the imposition of lawyer discipline is warranted, asserting that he was not convicted of a serious crime and that his conviction does not relate to the practice of law.[5] This matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
On October 15, 2004, Ms. Dreyfus informed respondent that she would not force their youngest child to go with him for visitation. Rather than seeking relief from the court or authorities to enforce the *321 custody order, respondent instead proceeded to the residence to force the issue himself. At the door, Ms. Dreyfus again told respondent that she would not require the youngest child to go with him. At that point, respondent testified that Ms. Dreyfus blocked the door, and he “pushed” her aside to enter the home to gather the children. Ms. Dreyfus contends that respondent not only pushed her but pressed her up against the door with his right arm and raised his left hand clenched in a fist to strike her.
lfiMs. Dreyfus had a male friend at the house at that time, David Bryant, a Louisiana State Trooper. Mr. Bryant did not witness the initial interaction at the door between Ms. Dreyfus and respondent, but did hear yelling and a loud thud. Mr. Bryant testified that when he reached the door, he observed respondent pressing Ms. Dreyfus against it with his right arm and his left hand was clenched in a fist about to strike Ms. Dreyfus. Mr. Bryant was able to get respondent to let Ms. Dreyfus go, and he and respondent moved out onto the porch. The Ruston Police Department was called and while they were en route to the home, respondent left the scene and was the subject of a traffic stop on the way back to his residence. A full investigation was undertaken by the Ruston Police Department, which was detailed in the documentary evidence submitted, including the testimony of the principal witnesses and the officers involved in the investigation. In addition to the witness statements, the police reviewed photographs of the injuries sustained by Ms. Dreyfus, and found independent evidence in the form of a broken door wreath with portions of the wreath in Ms. Dreyfus’s hair and down the back of her clothing.
The committee found that the hearing testimony of Ms. Dreyfus and Mr. Bryant concerning the October 15, 2004 incident is fully supported by the documentary evidence, particularly the multiple consistent statements made by Ms. Dreyfus and Mr. Bryant in the criminal case and in the custody proceedings. Respondent’s middle daughter, age twelve at the time of the incident, also corroborated her mother’s account of the incident, testifying to a hearing officer in the custody case that she saw her dad push her mom “up against the door.” Finally, the committee found that as between respondent and Ms. Dreyfus, Ms. Dreyfus was the more credible witness. She appeared earnest and honest before the committee, answering questions directly without any hint of evasiveness. Her recall and recount of the events in question was unequivocal.
17Respondent was tried in 2008 on a charge of domestic abuse battery. Following a three-day trial, respondent was found guilty as charged. The trial court made a specific factual finding that respondent intentionally used force against Ms. Dreyfus without her consent, and that the injuries she sustained “were consistent with the type and degree of force used against her and on the areas of her body where the force was applied.” Respondent was sentenced with the benefit of La.Code Crim. P. art. 894. Pursuant to that article, the conviction was subsequently set aside and the prosecution dismissed.
Based on these factual findings, the committee determined that respondent’s conviction of domestic abuse battery constituted a violation of Rule 8.4(b) of the Rules of Professional Conduct.
The committee found respondent intentionally violated duties owed to the public, causing substantial harm. Based upon the ABA’s Standards for Imposing Lawyer Sanctions, the applicable baseline sanction in this matter is suspension.
In mitigation, the committee recognized the following factors: absence of a prior *322 disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation,[6] imposition of other penalties or sanctions, and remorse. The committee found the following aggravating factors are present: refusal to acknowledge the wrongful nature of the conduct[7] and substantial experience in the practice of law (admitted 1987).
Turning to the issue of an appropriate sanction for respondent’s misconduct, the committee considered In re: Cardenas, 11-0031 (La.5/6/11), 60 So.3d 609, in which the respondent lawyer was convicted of domestic abuse battery for striking his estranged wife in the presence of their minor child. For this conduct, the court | simposed a one-year suspension, with six months deferred, followed by probation. Given the similarity of Cardenas to the instant matter, the committee recommended respondent be suspended for one year and one day, with six months deferred.
Both respondent and the ODC filed objections to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. Based on these facts, the board determined that respondent violated Rule 8.4(b) of the Rules of Professional Conduct.
The board found respondent violated duties owed to the public and the profession when he willingly and intentionally committed a domestic battery. Although the incident had only a minimal short-term physical impact upon Ms. Dreyfus, it could potentially have had long-term psychological repercussions for both Ms. Dreyfus and respondent’s daughter, who was present at the time of the incident. The reputation of the profession is likewise harmed when a lawyer commits a crime of violence. The applicable baseline sanction in this matter is suspension.
In mitigation, the board recognized the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remorse. The board found the following aggravating factors are present: refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and illegal conduct.
InThe board observed that sanctions in eases concerning attorneys who have engaged in violent conduct range from a one-year suspension to disbarment. Considering the facts of the case, the board recommended that respondent be suspended from the practice of law for one year, with six months deferred, followed by a two-year period of probation. The board also recommended respondent be assessed with all costs and expenses of these disciplinary proceedings.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
In an attorney disciplinary proceeding based on the lawyer’s criminal *323 conviction, the issue of his guilt may not be relitigated. Because the lawyer’s conviction, whether based on adjudication or guilty plea, is tantamount to a finding of his guilt beyond a reasonable doubt, the clear and convincing standard of proof that applies to disciplinary proceedings has already been satisfied. In re: Bankston, 01-2780 (La.3/8/02), 810 So.2d 1113; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). In this type of proceeding, the sole issue to be determined is whether the crime warrants discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76.
Our first inquiry is whether the crime of which respondent was convicted, domestic abuse battery, is a crime warranting discipline. In this regard, we are guided by Supreme Court Rule XIX, § 19(A), which defines “serious crime” as “a felony or any other crime, the necessary elements of which as determined by the statute defining such crime, reflect upon the attorney’s moral fitness to practice 1 mlaw.” Although the crime of which respondent was convicted is a misdemeanor, we conclude the elements of that crime reflect upon his moral fitness to practice law. In particular, La. R.S. 14:35.3(A) defines the crime of misdemeanor domestic abuse battery as the “intentional use of force or violence committed by one household member upon the person of another household member without the consent of the victim.” Clearly, the use of force by an attorney against a household member raises questions about the attorney’s moral fitness to practice. Therefore, we find the crime of which respondent was convicted is a crime warranting professional discipline.[8]
Having determined discipline is warranted, the only remaining issue is the appropriate sanction for respondent’s misconduct. In examining our prior jurisprudence in this area, we note there is a considerable range of sanctions imposed upon attorneys who have been found to engage in conduct involving physical violence. See, e.g., In re: Cardenas, 11-0031 (La.5/6/11), 60 So.3d 609, (attorney suspended for one year with six months deferred based on conviction of domestic abuse battery for striking his estranged wife in the presence of their minor child); In re: Willis, 09-0211 (La.5/13/09), 8 So.3d 548 (attorney disbarred based on multiple professional violations, including charges he was involved in a physical altercation); In re: Sterling, 08-2399 (La.1/30/09), 2 So.3d 408 (attorney suspended for two years based on multiple professional violations, including charges based on his conviction for unauthorized entry of an inhabited dwelling); In re: Estiveme, 99-0949 (La.9/24/99), 741 So.2d 649 (attorney suspended for one year based on charges he used an unloaded gun to threaten another attorney). This divergence suggests that the determination of an appropriate sanction in this Inarea may turn on the unique facts and circumstances of each case, making it difficult to draw much guidance from prior jurisprudence.[9] Nonetheless, the *324 broad principle which may be distilled from these cases is that we have at a minimum imposed a period of suspension in cases where attorneys have been convicted of crimes involving physical violence. Therefore, the baseline sanction in this case is a period of suspension. See also Standard 5.12 of the ABA’s Standards for Imposing Lawyer Sanctions.[10]
The record supports the following aggravating factors: refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and illegal conduct. In mitigation, we recognize the absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and the imposition of other penalties or sanctions in connection with the criminal proceeding.
Considering all the facts of this case, we conclude the appropriate sanction for respondent’s misconduct is a six-month suspension from the practice of law. However, considering the presence of significant mitigating factors, particularly the absence of a prior disciplinary record and the imposition of other penalties, we will defer all but thirty days of that sanction. See In re: Greenburg, 08-2878 (La.5/5/09), 12 9 So.3d 802 (attorney who engaged in a physical altercation in open court suspended for six months, with all but thirty days deferred in light of mitigating factors including lack of prior disciplinary record and imposition of other sanctions). Following the active portion of his suspension, respondent shall be placed on unsupervised probation for a period of two years. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Chris L. Bowman, Louisiana Bar Roll number 18131, be and he hereby is suspended from the practice of law for six months. All but thirty days of the suspension shall be deferred, subject to respondent’s successful completion of a two-year period of unsupervised probation. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing *325 additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
Judge JEFFERSON D. HUGHES III, assigned as Justice pro tempore, sitting for KIMBALL, C.J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.
VICTORY, J., dissents and would impose a harsher sanction.

 Judge Jefferson D. Hughes III, assigned as Justice pro tempore, sitting for Kimball, C.J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

. Respondent still co-owned the house at this time, and it was not subject to any use or occupancy judgment.

. Ms. Dreyfus also had bits of a door wreath in her hair and on the back of her shirt, and bruises on her arm and thigh.

. On September 18, 2008, the Second Circuit Court of Appeal denied respondent’s writ application seeking review of his conviction and sentence. This court likewise denied writs. State v. Bowman, 08-2521 (La.9/4/09), 17 So.3d 949.

. Respondent had previously filed a complaint against Mr. Bryant with the Internal Affairs division of the Louisiana State Police, in which he asserted that Mr. Bryant had used physical force to interfere with a lawful order of custody of respondent's children.

.In July 2011, the ODC amended the formal charges to include an additional count of alleged misconduct; however, both the hearing committee and disciplinary board found insufficient evidence to support this count. The ODC did not file an objection to the board's recommendation. Accordingly, we will make no further reference to the amended formal charges.

. Appearing pursuant to subpoena, two district judges testified regarding respondent’s character at the hearing.

. The committee noted that respondent is "continuing to argue his conviction should not have been a conviction at all, and was somehow politically motivated to hurt him in his run for district attorney.”

. The mere fact that respondent's conviction was subsequently set aside under La.Code Crim. P. art. 894 does not preclude the use of that conviction for bar disciplinary purposes. See In re: Edwards, 99-1825 (La.7/2/99), 747 So.2d 6; In re: Yarno, 98-0442 (La.5/29/98), 713 So.2d 451; Louisiana State Bar Ass’n v. Porterfield, 550 So.2d 584 (La.1989).

. In recommending a sanction in this matter, the hearing committee and disciplinary board relied principally on our decision in Cardenas. While we acknowledge there is some similarity between Cardenas and the instant case, the subtle factual distinctions inherent in cases in this area preclude giving too much weight to any single prior decision. While our precedents provide general guidance in this area, *324 the appropriate sanction must be determined with reference to the unique facts and circumstances of the specific case at issue.

. Under Standard 5.12, suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer’s fitness to practice law. By way of reference, Standard 5.11 provides for disbarment when: (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice law.