PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Juan C. Labadie, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Labadie , 16-0884 (La. 8/31/16), 199 So.3d 607.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1996.
In 2011, respondent consented to be suspended from the practice of law for one *560 year and one day, fully deferred, subject to a two-year period of supervised probation with conditions, for maintaining incomplete records of his client trust account, which resulted in a negligent commingling and conversion of funds. In re: Labadie , 11-1021 (La. 6/24/11), 65 So.3d 152.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.
FORMAL CHARGES
17-DB-002
Count I
Judge Michael Mentz presided over a child custody and support suit involving respondent and respondent's former spouse. During the proceeding, respondent was ordered to submit to a drug test, which he refused. Judge Mentz later recused himself from the matter because respondent qualified to run against him in the general election for the Division "F" bench in the 24th Judicial District Court.
During the election, respondent made statements to the news media and it was reported "there was no basis for his ex-wife's request that he be drug-tested, and he accused Mentz of altering the court transcript as it related to the deadline by which he was supposed to take the drug test." According to a news story published on nola.com on September 26, 2014, respondent made accusations against Judge Mentz by "asserting that Mentz has doctored the public record, altering the transcript of an Aug. 7 court hearing." According to an article published in The New Orleans Advocate dated October 25, 2014, respondent stated that he was running for judge to "highlight that Mentz doesn't belong on the bench." Respondent said that "when faced with a situation where I have firsthand knowledge (of misconduct) and I know it happened, how can I turn my back on this and not do it?"
In response to the accusation, Judge Mentz publicly stated that he has never altered a transcript and would have no reason to alter one. Judge Mentz also stated that he is not involved in transcribing court proceedings and has never reviewed a transcript before it was entered into the record.
Respondent later made the same accusation of transcript tampering against Judge Mentz during a formal ODC proceeding. Respondent testified that a tape recording could establish his claims that a transcript of the hearing in front of Judge Mentz had been altered.
In the domestic proceeding, respondent filed a motion to review the audio file, but the request was denied. Respondent sought supervisory review of this ruling. The Fifth Circuit Court of Appeal ordered Judge Donald A. Rowan to conduct an in camera inspection of the audio file of the August 7, 2014 hearing to ensure that the written transcript in the trial record accurately reflected the verbal orders of Judge Mentz. Judge Rowan's report and affidavit to the court confirmed the accuracy of the transcript when compared with the audio recording. Respondent did not produce any evidence to support the statements and allegations he made to nola.com and to the Advocate. The investigation by the Fifth Circuit concluded that respondent's accusations against Judge Mentz were without merit.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard for its truth or falsity concerning the qualifications or integrity of a judge), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), *561 and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II
Tamara George was injured in a slip and fall accident at the Boomtown Casino gift shop. On March 4, 2004, she retained respondent to represent her in a claim for damages against Boomtown. Although Ms. George signed a contract with respondent, he never provided her with a copy of the contract. On March 1, 2005, Ms. George's claim against Boomtown prescribed.
In September 2004, respondent advised Ms. George that he had filed suit on her behalf. Thereafter, Ms. George made several attempts to contact respondent regarding the status of her suit, to no avail. On February 19, 2007, she contacted the Second Parish Court and the 24th Judicial District Court (both courts of proper venue) in an effort to discover the status of her suit, but she was advised that neither venue had a record of her suit.
Ms. George scheduled an appointment with respondent for February 27, 2007, at which time she was advised that the case had been "lost." Respondent did not admit to Ms. George that he never actually filed suit. Ms. George then filed a malpractice suit against respondent.
The malpractice suit was settled pursuant to a consent judgment dated October 5, 2011. Under the terms of the agreement, respondent was to pay Ms. George a total of $22,355 in damages; of that amount, $15,548.74 was to be paid no later than sixty days from September 21, 2012, and $4,231.26 was to be paid no later than 120 days thereafter. In addition, respondent was to pay $2,575 to Ms. George's medical provider, also within 120 days of September 21, 2012. To date, however, no funds have been paid to Ms. George or to the medical provider.
The sixth provision of the consent agreement barred Ms. George from filing a formal complaint with the Louisiana Attorney Disciplinary Board and/or the Louisiana State Bar Association. This provision of the agreement was impermissible.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.4(c), and 8.4(d).
Count III
Cammie Templet hired respondent to appeal a restitution order which had been entered against her in a criminal case. Ms. Templet paid respondent $3,000 for the representation in October 2013. In December 2013, respondent filed a motion to stay enforcement of the restitution order in the Fifth Circuit Court of Appeal. The motion was denied. Respondent filed an appeal in January 2014, at which time delay cutoffs were set by the court. On March 13, 2014, respondent was notified that his brief was overdue. He then filed a voluntary motion to dismiss the appeal, which was granted on March 31, 2014.
Ms. Templet regularly attempted to contact respondent to discover the status of her appeal. On November 25, 2014, nearly eight months after respondent had dismissed the appeal, Ms. Templet sent respondent a text message requesting the status of the appeal. Respondent failed to reveal that he had already dismissed the appeal. On December 1, 2014, Ms. Templet again messaged respondent, but he did not respond. On December 4, 2014, she messaged respondent, who replied that he would answer the message later that day. He failed to do so. On December 9, 2014, Ms. Templet texted respondent. Again, respondent failed to advise that he had dismissed the appeal. Ms. Templet *562 and respondent messaged back and forth on December 10, 11, and 17. On December 17, 2014 respondent stated to Ms. Templet that he did not think that the appeal would be a good idea "considering that your payments were lowered to what I believe would be lower than you would have even if successful in an appeal." Respondent failed to disclose that he had long since dismissed the appeal. Ms. Templet requested a refund, but respondent balked at the suggestion.
Shortly thereafter, Ms. Templet contacted the court to seek the status of her appeal. The clerk informed her that the appeal was voluntarily dismissed in March 2014. Respondent stopped responding to Ms. Templet's attempts at contact. She has never received an accounting of the $3,000 fee she paid to respondent.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), and 8.4(c).
17-DB-025
Count I
Deborah Frazier hired respondent to represent her interests in a potential malpractice claim against her former attorneys. She paid respondent $3,000 for the representation and met with respondent on September 21, 2013 to discuss the case.
Despite frequent calls to respondent, Ms. Frazier was unable to compel respondent to take action on her claim. Respondent ultimately allowed her cause of action to prescribe. Ms. Frazier asked respondent to refund the fee, to no avail. After July 1, 2015, respondent's telephone line was disconnected and Ms. Frazier was unable to locate respondent.
In May 2016, Ms. Frazier filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.15(d) (failure to timely remit funds to a client or third person), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), and 8.1(c) (failure to cooperate with the ODC in its investigation).
Count II
Lana Rousell paid respondent $1,000 to represent her son. On November 10, 2014, Ms. Rousell visited respondent's office to terminate his services and request a refund. That day, respondent agreed to issue a refund. By October 2015, he still had not refunded the money, and Ms. Rousell filed a disciplinary complaint against respondent.
Respondent received notice of the complaint but failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. Respondent appeared for the sworn statement, at which time he admitted advising Ms. Rousell that he would issue a $1,000 refund. Respondent stated that he would be able to issue the refund within thirty days, but he failed to do so.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(5) and 1.15(d).
Count III
The Louisiana Attorney General sent a formal complaint to the ODC. Attached to the complaint was a crime report from the Jefferson Parish Sheriff's Office indicating that on July 23, 2014, deputies were dispatched to take the statement of Sherri Patureau, respondent's live-in girlfriend, *563 who had suffered domestic abuse at the hands of respondent. According to the report, respondent had isolated Ms. Patureau in the master bedroom closet of her home and verbally abused her. When she tried to leave, respondent grabbed her and threw her to the floor. While on the floor, respondent grabbed Ms. Patureau by the neck and pinned her down. Ms. Patureau tried to get up, but respondent grabbed her hair and held her down. Ms. Patureau felt short of breath, and respondent told her that she "deserved to die." Respondent then rose and wielded a leather belt, menacing Ms. Patureau with the belt. Shortly thereafter, Ms. Patureau was able to escape the home with her two children. According to the police report, Ms. Patureau sustained physical injuries in the form of swelling of her left wrist and a redness of her neck. Respondent was apprehended by deputies and arrested for domestic abuse battery.
According to Ms. Patureau's sworn statement, as well as the crime report, respondent spat tobacco saliva in Ms. Patureau's face while she was pinned to the floor. Additionally, Ms. Patureau advised that on a later, separate occasion while she and respondent lived with his parents, respondent held the edge of a straight razor to her throat in a menacing and threatening manner. Asked if she feared for her life, she admitted that she did.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).
Count IV
The Louisiana Attorney General sent a formal complaint to the ODC. Attached to the complaint were police reports alleging that respondent had engaged in domestic violence against his wife, Lori Labadie.
The first police report indicated that on January 1, 2005, pursuant to a verbal argument about finances, respondent grabbed Ms. Labadie, kicked her on the left knee, and pushed her out of the home and into the yard. Deputies noted marks on Ms. Labadie's wrist and knee. Respondent was placed under arrest.
A second police report indicated that on May 1, 2010, Ms. Labadie was attempting to enter the family home, but respondent had physically restrained her and pushed her away. Respondent then used his body to block her entrance into the home. At the time, respondent had an active arrest warrant and deputies took him into custody.
In the family law dispute between respondent and Ms. Labadie, respondent was ordered by the court to submit to a drug test, but he refused to comply. On August 11, 2014, Judge Mentz held respondent in contempt of court and ordered him to serve thirty days of house arrest. That day, respondent announced his campaign to unseat Judge Mentz in the upcoming judicial election. Judge Mentz was compelled to recuse himself from the case. There is an outstanding attachment for respondent's arrest because he failed to appear at a hearing on his motion to recuse Judge Donald Rowan, who is currently presiding over his domestic matter. Respondent's motion was denied and the order of attachment was issued.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(a), 8.4(b), and 8.4(d).
*564 DISCIPLINARY PROCEEDINGS
The ODC filed two sets of formal charges against respondent under disciplinary board docket numbers 17-DB-002 and 17-DB-025. Respondent failed to answer either set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).
The matters were then considered by separate hearing committees. No formal hearings were held, but the parties were given an opportunity to file with the hearing committees written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration in either matter.
Thereafter, the board filed in this court a recommendation of discipline pertaining only to 17-DB-002. Prior to any action by the court on that matter, the ODC filed a motion to remand, advising of the additional disciplinary matter (17-DB-025) involving respondent. We granted the motion to remand and 17-DB-002 was returned to the board for consolidation with 17-DB-025. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.
Hearing Committee Reports
17-DB-002
After considering the ODC's deemed admitted submission, the hearing committee acknowledged that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence. The committee also made the following factual findings:
In Count I, respondent accused a sitting judge facing re-election of doctoring a public record by altering the transcript of a court hearing in which respondent was a party. This accusation was made public in news stories carried in both local newspapers. Respondent offered no proof of his own and an examination of the hearing tape proved the accusation to be false.
In Count II, respondent lied to his client when he told her he had filed her lawsuit. He then ignored further communications regarding the status of the matter. When confronted by the client after she found out on her own that no suit was filed, respondent lied to her again when he said her case had been "lost." Respondent never admitted his failure to file suit.
In Count III, respondent accepted $3,000 to file an appeal. After missing the deadline to file his client's brief, respondent voluntarily dismissed the appeal but did not tell his client. Despite multiple communications, respondent failed to reveal to his client that he had dismissed her appeal. He later told the client that the appeal was not a good idea, despite taking the engagement for just that purpose. After the client found out on her own that respondent had dismissed her appeal, respondent stopped responding to the client's communication attempts. Respondent failed to account for the $3,000 fee he accepted.
Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee found respondent violated duties owed to his clients, the public, the legal system, and the profession. His conduct caused actual harm to his clients. After considering the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the baseline sanction is suspension. The committee found the following aggravating factors are present: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, substantial experience in *565 the practice of law, indifference to making restitution, and "failure to respond to these proceedings." The sole mitigating factor found by the committee was respondent's personal and emotional problems.[1]
After considering this court's prior jurisprudence addressing similar misconduct, as well as the multiple aggravating factors present in this case, the committee recommended respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
17-DB-025
After considering the ODC's deemed admitted submission, the hearing committee acknowledged that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined respondent violated Rules 1.3, 1.4, 1.5(f)(5), 3.4(c), 8.1(c), 8.4(a), 8.4(b), and 8.4(d) of the Rules of Professional Conduct.
The committee determined respondent knowingly violated duties owed to his clients, and that his misconduct caused injury to his clients. Respondent abused the judicial process by failing to appear in court when so ordered by a judge and by failing to take a drug test when so ordered by the court. While it is unclear from the record whether he has ever been convicted of a criminal act, respondent physically abused his former wife as well as his domestic partner. Respondent did not display an inability to assist in his defense with regard to the disciplinary proceeding due to a physical or mental incapacity.
After considering the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the baseline sanction is suspension. The committee found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of conduct, vulnerability of the victim, substantial experience in the practice of law, indifference to making restitution, and illegal conduct. The committee found the following mitigating factors are present: personal or emotional problems and mental disability or chemical dependency.[2]
After further considering this court's prior jurisprudence addressing similar misconduct, as well as the multiple aggravating factors present in this case, the committee recommended respondent be suspended from the practice of law for one year and one day. The committee also recommended respondent be required to pay restitution to Ms. Frazier in the amount of $3,000 and to Ms. Rousell in the amount of $1,000.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.
*566 Disciplinary Board Recommendation
17-DB-002 and 17-DB-025
After considering the collective misconduct in these matters, and the jurisprudence of this court, the disciplinary board recommended respondent be disbarred. The board also recommended respondent be ordered to pay restitution to Ms. George, Ms. Templet, Ms. Frazier, and Ms. Rousell. Finally, the board recommended respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan , 01-3058 (La. 1/10/03), 838 So.2d 715.
The record in this consolidated proceeding supports a finding that respondent neglected his clients' legal matters, failed to return unearned fees, made false statements regarding the integrity of a judge, and committed multiple acts of domestic violence. Based on these facts, respondent has violated the Rules of Professional Conduct as charged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
Respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct was both knowing and intentional, and caused actual harm. The baseline sanction for this misconduct is suspension.
The record supports the following aggravating factors: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of conduct, vulnerability of the victims, substantial experience in the practice of law, indifference to making restitution, and illegal conduct. No mitigating factors are present.
*567 In deemed admitted matters of misconduct involving neglect, failure to communicate, failure to return unearned fees, and failure to cooperate with the ODC, we have typically imposed suspensions of at least one year and one day.[3] We have imposed short periods of suspension for matters wherein an attorney was found to have committed acts of domestic violence.[4] We have recently disbarred an attorney who was found to have made false statements regarding the qualifications or integrity of a judge.[5]
Considering the totality of the misconduct in this proceeding in light of our jurisprudence, we will adopt the disciplinary board's recommendation and disbar respondent. We will further order respondent to (1) pay restitution to Tamara George consistent with the provisions of the malpractice settlement, (2) provide an accounting and/or a refund of unearned fees, with legal interest, to Cammie Templet, (3) provide a refund of $3,000, with legal interest, to Deborah Frazier, and (4) provide a refund of $1,000, with legal interest, to Lana Rousell.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Juan Carlos Labadie, Louisiana Bar Roll number 24145, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution to his clients as set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

The committee's report does not elaborate on the nature of these problems.

Respondent tested positive for cocaine in 2016, which was a basis for the ODC's petition for interim suspension for threat of harm to the public. However, in order to prove the mitigating factor of chemical dependency or mental disability, ABA Standard 9.32(i) provides the lawyer must prove the following four factors by clear and convincing evidence: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability ; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. See In re: Stoller , 04-2758 (La. 5/24/05), 902 So.2d 981. The committee did not discuss these factors.

In In re: Engum , 09-1619 (La. 10/28/09), 21 So.3d 926, an attorney was suspended for one year and one day for neglecting legal matters, failing to communicate with clients, failing to timely account for or refund unearned fees, and failing to fully cooperate with the ODC in its investigations.

In In re: Bowman , 12-2410 (La. 3/19/13), 111 So.3d 317, an attorney was suspended for six months, with all but thirty days deferred, based on his conviction of domestic abuse battery for pushing his ex-wife with his arm, causing her to stumble backwards against a door, and pinning her against the door by placing his forearm against her throat and chest. In In re: Cardenas , 11-0031 (La. 5/6/11), 60 So.3d 609, an attorney was suspended for one year, with six months deferred, based on his conviction of domestic abuse battery for striking his estranged wife in the presence of their minor child.

In In re: McCool , 15-0284 (La. 6/30/15), 172 So.3d 1058, an attorney was disbarred using the Internet and social media to disseminate false and misleading information about two judges handling her client's child custody cases.