# Supreme Court of Louisiana

The Opinions handed down on the **29th day of January, 2020** are as follows:

**PER CURIAM:**

2019-B-01515            IN RE: DAVID GARDNER DEBLIEUX

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that David Gardner deBlieux, Louisiana Bar Roll number 29141, be and he hereby is suspended from the practice of law for a period of one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUSPENSION IMPOSED.

Retired Judge James H. Boddie, Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

Johnson, C.J., dissents and assigns reasons.
Crichton, J., concurs in part, dissents in part and assigns reasons.
Crain, J., concurs in part, dissents in part for the reasons assigned by Johnson, C.J.

SUPREME COURT OF LOUISIANA

NO. 2019-B-1515

IN RE: DAVID GARDNER deBLIEUX

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM[*]

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, David Gardner deBlieux, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

The following facts are not in dispute, having been stipulated to by the parties:

Respondent is married to S.D. and they are the parents of a son and two daughters, all under the age of thirteen. As a result of ongoing marital discord, respondent and S.D. physically separated on February 16, 2017. S.D. left the marital home and moved to a rental house in order to live separate and apart from respondent. The rental house was the exclusive residence of S.D. and respondent did not have a key or access to the house.

During late February 2017, respondent took the children to Colorado on a ski vacation. S.D. did not attend. At the end of the vacation, respondent drove back and while en route communicated with S.D. that he would spend the night at a hotel in Shreveport. It was anticipated that S.D. would drive to Shreveport and then on to Jackson, Mississippi the following day, where their son was scheduled to participate in a soccer tournament, and that she would bring his equipment and uniform.

---

[*] Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

However, rather than stay overnight in Shreveport, respondent decided to return to Baton Rouge with his two minor daughters and drove directly to S.D.'s residence, arriving on the morning of March 4, 2017 at approximately 2:00 a.m. Believing that S.D. was in her rental home with a male guest, respondent kicked in the locked front door of S.D.'s house, causing the frame to splinter. Respondent then entered the inhabited dwelling without permission to do so. He encountered S.D., who attempted to prevent him from making physical contact with her male guest, and pushed her to the side. Respondent next encountered the male guest and engaged in a physical altercation, striking the male guest and wrestling him to the floor and continuing to strike him while fully on top of him. S.D. attempted to intervene to stop the altercation by climbing onto respondent's back in an effort to pull him off the male guest, but respondent stood up, causing S.D. to fall. Respondent then walked out of S.D.'s residence, got into his car where his two daughters were sleeping, and returned to the marital residence.

At the marital residence, respondent retrieved his wife's clothing. He returned to his wife's home with the minor children still in the vehicle, tossed her clothes onto the driveway, and left. Within a few minutes, respondent again returned to his wife's home and sought to retrieve his son's soccer equipment and uniform from S.D.'s locked vehicle. S.D. declined to give respondent access to the vehicle and attempted to step between respondent and her vehicle. Respondent pushed S.D. out of the way, picked up a nearby concrete cinder block and smashed it through the vehicle's rear driver's side window. At the point in time when respondent and S.D. were arguing and he struck her vehicle with the concrete cinder block, their two minor daughters were awake in his vehicle and crying.

Respondent admits that his conduct satisfies the elements of the crimes of unauthorized entry of an inhabited dwelling, domestic abuse battery, simple battery, and simple criminal damage to property.

2

## DISCIPLINARY PROCEEDINGS

The ODC learned of respondent's arrest from local news media on March 10, 2017. Respondent self-reported his arrest to the ODC by letter dated March 13, 2017. In October 2017, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Respondent answered the formal charges, and the matter was set for a formal hearing. Prior to the hearing, respondent and the ODC filed a joint stipulation of facts. In this document, respondent admitted to the facts as set forth above and admitted that he violated the Rules of Professional Conduct as charged. The matter then proceeded to a hearing in mitigation, which was conducted by the hearing committee on March 14-15, 2018.

*Hearing in Mitigation*

The ODC called Lieutenant Charles Polozola of the Baton Rouge Police Department to testify concerning the circumstances of respondent's arrest, and called Tracey Barbera, the First Assistant District Attorney for the East Baton Rouge District Attorney's Office, to testify as a rebuttal witness.

Respondent presented the testimony of the following witnesses: his wife, S.D.; his father-in-law, James Lambert; his present employer, attorney Spencer Calahan; a former co-worker at the East Baton Rouge District Attorney's Office, Lauren Corkern; Sherry Smelley, MSW, LCSW; Paul Dammers, Ph.D., a neuropsychologist (by deposition); a current client, Mia McDaniel; and Amy House, Jeremy Couvillion, and Sharon Ogra, friends of respondent and his wife. Respondent also testified on his own behalf and on cross-examination by the ODC.

3

The testimony at the hearing revealed that respondent and his wife met in law school and married in 2003, while both were third-year law students. By 2010, respondent had begun suffering from depression and anxiety and there was a lack of intimacy between the couple. In 2013, S.D. began an extramarital affair with a co-worker. Over the next year, respondent and S.D. participated in individual and couple's counseling. In April 2014, respondent's internist prescribed Lexapro, an anti-anxiety medication; however, due to the side effects of the medication, respondent did not take it daily as prescribed. In the fall of 2015, respondent completely discontinued Lexapro without medical advice or supervision.

S.D. described respondent as generally easy going and laid back until about 2015, when he often became easily agitated and began exhibiting symptoms of poor temper control. S.D. related these symptoms to respondent's discontinuing his Lexapro. In October 2015, S.D. hit respondent while he was lying in bed. In turn, respondent used his foot to push S.D. away from him and into a windowsill, causing a significant bruise to her hip. After this incident, a counselor respondent was seeing warned him that it was important to take Lexapro consistently. Respondent then resumed taking his medication until approximately October 2016, when he lost his health insurance following his resignation from the East Baton Rouge District Attorney's Office.

In addition to these marital problems, respondent described increased work-related stress that began in approximately 2015 when he was reassigned to a new section of court. In May 2016, respondent was accused of misappropriating $1,000 in cash from a defendant who said he had given the funds to respondent for costs. Respondent was placed on administrative leave pending an investigation. The investigation did not find sufficient evidence to prove a case against respondent beyond a reasonable doubt. Respondent said that thereafter, he was supposed to return to his employment but the East Baton Rouge District Attorney, Hillar Moore,

4

suggested respondent resign because of the "political climate" in Baton Rouge after the Alton Sterling shooting.[1]  Respondent ultimately agreed to resign from the District Attorney's Office in September 2016 because he had ten years of service and was vested in the retirement system.

In late December 2016, respondent and his wife were involved in an argument. S.D. was in the bathroom and squirted respondent with contact lens saline solution. Respondent pushed S.D. out of the way to leave the bathroom and slapped his wife in the face.  Respondent left the home temporarily and then took the children camping for the New Year's 2017 holiday.  Upon their return home, respondent slept on the sofa, but he eventually returned to the couple's bed.  S.D. was busy preparing for an important work-related deadline during most of January and early February 2017 and therefore the couple did not address the December 2016 incident during this time.  However, on February 16, 2017, S.D. informed respondent that she had rented a house and was moving out of their home to get some space and work on their marriage.

Although the family had plans to go to Colorado for an annual ski trip on February 25, 2017, S.D. told respondent that she was not going, but that he should go ahead and take their children.  The plan was for respondent and the children to leave Colorado on March 3, 2017 to meet S.D. in Shreveport, so that she could pick up their son and drive him to Jackson, Mississippi for a soccer tournament beginning on March 4, 2017.  Their son decided to ride with two friends and another parent who were also traveling back to Louisiana from Colorado.  Respondent left Colorado to drive home with his two daughters on March 3, 2017.  Respondent and S.D. communicated by phone during the drive back.  Respondent believed that during

_____

[1] Tracey Barbera, the First Assistant District Attorney for the East Baton Rouge District Attorney's Office, testified on rebuttal that the Alton Sterling shooting had nothing to do with respondent's resignation.

5

these conversations S.D. was making an obvious effort to persuade him to stop overnight in Shreveport, which convinced respondent that S.D. was continuing her extramarital affair and trying to hide it, despite her repeated assurances to him that the purpose of the separation was to work on their marriage. Respondent decided that he would not follow through on his plans to stop for the night and would instead drive twenty hours straight through to Baton Rouge.

When he arrived in Baton Rouge at approximately 2:00 a.m., respondent did not go home. Rather, he drove out of his way to S.D.'s rental house. At the house, respondent saw his wife's co-worker's car in the driveway. The incident then occurred as described in the underlying facts section above.

S.D. called the police after the incident but they did not arrive until approximately three hours after respondent left. Both S.D. and her co-worker declined to seek medical treatment in connection with the incident. Shortly after the incident, respondent repaired the damage to S.D.'s door and offered to arrange and pay for the installation of a security system. He also arranged and paid for the replacement of the broken window in S.D.'s vehicle and ensured that she had a vehicle to drive while the window was being replaced.

On March 7, 2017, respondent sought counseling with Sherry Smelley, MSW, LCSW. He continued his sessions with her on a weekly basis and was still in counseling with her at the time of the hearing.

On March 20, 2017, respondent began seeing a new internist who prescribed Cymbalta, an anti-depressant, rather than the Lexapro respondent had previously taken. Thereafter, respondent was referred to Dr. Paul Dammers, a neuropsychologist. Respondent was evaluated on May 19, 2017 with a follow-up appointment on May 24, 2017 to discuss the results of the evaluation.[2] Dr. Dammers

---

[2] Respondent's next appointment with Dr. Dammers prior to the hearing took place on January 30, 2018. Respondent attended this appointment with his attorney.

6

diagnosed respondent with mixed anxiety and depressive disorder and insomnia. In his notes, Dr. Dammers stated that respondent does not have a major psychiatric disorder associated with unstable mood, such as bipolar disorder or intermittent explosive disorder. Respondent also does not have any history of violence or conflict with others outside of the incident in question. Regarding that incident, Dr. Dammers stated:

> In light of the fact that this behavior is so out of character, it would stand to reason that the fact he had been driving for over 20 hours without sleep was contributory. It is also more probable than not, that inconsistently taking Lexapro coupled w/ unstable testosterone level could also contribute to destabilizing behavior. However, far and away, the most significant direct factor would be situational depression/anxiety related to discovering his wife was having an affair. The above factors likely contributed to faulty judgment out of impulse, in fact returning to the house twice following the initial confrontation.

In connection with the criminal charges against respondent, S.D. attempted to have the warrant for respondent's arrest recalled, but Lieutenant Charles Polozola of the Baton Rouge Police Department advised this was not possible. Respondent turned himself in on March 10, 2017. The Baton Rouge District Attorney's Office and the Attorney General's Office recused themselves, and the matter was assigned to the 18th JDC District Attorney's Office for handling. The office offered to dispose of any prosecution conditioned upon respondent's successful completion of a pre-trial intervention program. Respondent agreed and successfully completed the program in October 2017.

*Hearing Committee Report*

Considering the evidence and testimony presented at the hearing, the hearing committee adopted the factual allegations of the formal charges as its factual

7

findings. The ODC proved by clear and convincing evidence that respondent violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct.

The committee noted that the only issue before it is that of an appropriate sanction. In his pre-hearing memorandum, respondent suggested that the appropriate sanction in this case is a public reprimand or a fully deferred suspension. In its pre-hearing memorandum, the ODC argued that respondent should be suspended for a period of two years, citing *In re: Sterling*, 08-2399 (La. 1/30/09), 2 So. 3d 408. In *Sterling*, an attorney went to the apartment of his former fiancée at approximately 11:00 p.m. so that he could retrieve her engagement ring and the keys to a car he had given her. The attorney called the woman's home and cell phones and knocked on the doors and windows of the apartment, but she did not respond. The attorney then kicked in the door and forced his way inside the apartment. Upon discovering the woman in her bedroom with another man, the attorney grabbed her by the arms and pushed and shoved her around the apartment. The attorney was arrested on charges of unauthorized entry of an inhabited dwelling and simple battery. While the attorney also engaged in other relatively minor misconduct involving failure to return a client's file and failure to timely disclose his interim suspension status to a client, it was clear the felony conduct concerned the court the most, and the attorney was ultimately suspended for two years.

The committee determined that the facts of the instant case are not as egregious as those in the *Sterling* case. Respondent had been driving for twenty hours from Colorado at the time of the incident involved here and was in the process of trying to reconcile with his wife. While the committee did not condone respondent's actions, it noted that he was somewhat emotionally disturbed when he learned that an earlier affair between his wife and a co-worker was still ongoing.

The committee felt that the facts of *In re: Cardenas*, 11-0031 (La. 5/6/11), 60 So. 3d 609, were more similar to the case at hand. In *Cardenas*, the lawyer struck

8

his estranged wife in the presence of their minor children. He was subsequently convicted of domestic abuse battery (child endangerment), a misdemeanor, and placed on probation. For this conduct, the court suspended the lawyer for one year, with six months deferred, followed by a two-year period of probation. The committee noted that marital strife was a factor in both this case and *Cardenas* and that in the instant case it had been ongoing for several years. At the time of the incident at issue in this case, respondent and his wife were in the beginning of a physical separation and had undergone marriage counseling.

The committee observed that the witnesses for respondent, as expected, testified to his character and remorse over the incident. His psychologist testified that the incident in question was out of character for respondent and that this behavior was not likely to reoccur. On the other hand, the First Assistant District Attorney who worked in the District Attorney's Office at the same time as respondent cast some negative light on respondent's reputation and reasons for his leaving their employ. There was an incident where some money was missing and respondent was accused of having something to do with that; however, the parties implicating him were not deemed credible.

In mitigation, the committee recognized the absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse. The committee also noted that respondent is presently undergoing therapy and is compliant with his treatment and medication regimen at this time. These factors warrant a downward departure from the applicable baseline sanction, which the committee suggested is a two-year suspension from the practice of law.

In aggravation, the committee recognized the following factors: a selfish motive, deceptive practices during the disciplinary process (inconsistencies in respondent's statements regarding his reasons for departing the District Attorney's

Office), substantial experience in the practice of law (admitted 2004), and illegal conduct (a crime of violence which had the potential of putting lives in danger).

Based on the foregoing, the committee recommended that respondent be suspended from the practice of law for one year and one day. The committee noted that "[a] suspension of this length will require an assessment of the respondent's on-going therapy and whether or not he remains compliant before readmission to the practice of law."

Both respondent and the ODC filed objections to the hearing committee's report.

*Disciplinary Board Recommendation*

The disciplinary board adopted the hearing committee's factual findings, as they are based on the stipulations of the parties. In addition, respondent stipulated that he violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct as charged in the formal charges.

The board determined respondent violated duties owed to the public and the legal profession. The evidence shows and respondent has admitted that his conduct satisfies the elements of the crimes of unauthorized entry of an inhabited dwelling (a felony), domestic abuse battery, simple battery, and simple criminal damage to property (all misdemeanors). By definition, these offenses involve intentional acts. See La. R.S. 14:33, 14:35, 14:35.3, 14:56, and 14:62.3. Respondent's actions caused serious harm including damage to the front door of his wife's home, damage to a window of his wife's vehicle, physical injury to his wife's male guest, simple battery to his wife, and upset to his minor children. Further, his actions created the potential for even more serious harm. Respondent's forcible entry into his wife's home at 2:00 a.m. could have resulted in greater physical injuries, or potentially death, to the inhabitants of the home or himself. And while the evidence thankfully indicates that

the children have experienced no lingering effects from what they heard that evening, respondent's misconduct created the potential for harmful psychological ramifications for his children. Furthermore, respondent's actions and the resulting publicity reflect adversely on the profession as a whole. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the applicable baseline sanction in this matter is suspension.

The board found the following aggravating factors are supported by the record: a selfish motive, multiple offenses, deceptive practices during the disciplinary process (to the extent respondent was not completely forthright regarding his performance with the District Attorney's Office and his departure therefrom), substantial experience in the practice of law (over twelve years, including ten years working as an ADA), and illegal conduct. In mitigation, the board recognized the following factors: absence of a prior disciplinary record, personal or emotional problems (marital strife), timely good faith effort to make restitution or to rectify the consequences of the misconduct, a cooperative attitude toward the disciplinary proceedings (to the extent respondent entered into a stipulation of facts and rule violations), and remorse.

The board refused to recognize in mitigation three factors which respondent suggested are supported by the record: the absence of a dishonest or selfish motive, good character and reputation, and the imposition of other penalties or sanctions. The commission of misconduct as a result of respondent's personal feelings (whether jealousy, hurt, or anger) over his wife's leaving him and having an affair is a selfish motive. Regarding good character and reputation, respondent presented the testimony and letters of several family members, friends, and colleagues in support. However, there was also testimony about questionable circumstances related to his work with and departure from the District Attorney's Office. Further, there were also two prior altercations with respondent's wife, albeit less volatile than

11

the events of the night in question here. Therefore, the board did not find good character and reputation as a mitigating factor. Finally, as to the imposition of other penalties or sanctions, respondent was not prosecuted on the criminal charges against him but was instead allowed to participate in a pre-trial intervention program that involved one six-hour online course and the payment of several hundred dollars in fees and costs. Given the leniency of these requirements as compared to the severity of the misconduct committed by respondent, the board declined to find the imposition of other penalties or sanctions as a mitigating factor.

Respondent also argues that he is entitled to the mitigating factor of mental disability. In order to establish this factor, respondent must prove by clear and convincing evidence each of the following four requirements set forth in Standard 9.32(i) of the ABA's *Standards for Imposing Lawyer Sanctions*:

> (1) There is medical evidence that the respondent is affected by a chemical dependency or mental disability;
> (2) The chemical dependency or mental disability caused the misconduct;
> (3) The respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
> (4) The recovery arrested the misconduct and recurrence of that misconduct is unlikely.

*In re: Stoller*, 04-2758 (La. 5/24/05), 902 So. 2d 981, 988. The commentary to Standard 9.32 emphasizes the "careful analysis" that is required in considering issues of mental disability offered as mitigating factors in disciplinary proceedings, and that "direct causation between the disability" and the misconduct must be established. The commentary further discusses the weight to be assigned to this factor, indicating that "the greatest weight" should be assigned when the disability is the sole cause of the offense. If the disability is the principal cause of the offense, it should be given "very great weight"; if it is a substantial contributing cause of the

12

offense, it should be given "great weight." In all other cases in which the disability is considered as mitigating, the commentary indicates it should be given "little weight."

The expert testimony presented at the hearing relating to respondent's mental status at the time of his misconduct was based on information provided by respondent and his wife after the fact. The information included arguably self-serving testimony regarding respondent's irregular use of Lexapro which occurred around the time of each of his three incidences of physical altercations with his wife. The medication was prescribed by an internist who did not testify but whose records were introduced into evidence by respondent. Respondent and his wife also testified that prior to the night in question, respondent had been warned by another mental health provider, who did not testify, that it was important to take Lexapro consistently.

Respondent argues that mental disability should be considered as a mitigating factor based upon the testimony of Dr. Dammers. Dr. Dammers did not see respondent until after the incident in question and had not reviewed any of respondent's medical records. At the time of the hearing, respondent had seen Dr. Dammers three times, twice in May of 2017 and once in January 2018. Dr. Dammers made a fairly nondescript diagnosis of mixed anxiety and depressive disorder and insomnia. When asked whether respondent's anxiety and depression, combined with the stopping and starting of Lexapro, was a substantial contributing cause of respondent's conduct as described in a lengthy hypothetical question posed by respondent's counsel, Dr. Dammers replied, "Certainly." However, he went on to state that he was "not forming an assumption that there is a direct cause and effect that he hadn't taken Lexapro, he took it, and this surge in serotonin caused him to do something crazy." Additionally, Dr. Dammers opined in his notes that "far and away, the most significant direct factor [of the conduct in question] would be

situational depression/anxiety related to discovering his wife was having an affair"

and further testified:

> And the reason I'm saying that is if he had not walked in on that situation under those circumstances none of this ever would have happened. He never would have lost control of his temper is my contention. That he might have had contributing dysregulation from the starting and stopping of the Lexapro and the sleep [deprivation] and all those things but clearly, I mean this man has no history of violence or fighting, you know, and the impetus I'm sure was that moment.

Dr. Dammers also believed that at the time of his misconduct, respondent understood the difference between right and wrong.

During a sworn statement given in this matter, respondent was asked whether "jealousy" was the "real cause" of why he kicked in his wife's door. Respondent replied, "Yes." When cross-examined about this answer in his hearing testimony, respondent added that it was also hurt, anger, betrayal, exhaustion, unclear thinking, fear, "every litany of emotion."

In *In re: Perricone*, 18-1233 (La. 12/5/18), 263 So. 3d 309, this court rejected the argument of an Assistant United States Attorney that his post-traumatic stress disorder had any causative effect on his decision to post online comments regarding the cases his office was prosecuting. Similarly, the board concluded that based upon a review of the entire record of this matter, respondent has not shown by clear and convincing evidence that his misconduct was caused by any mental condition from which he was suffering.

Turning to the issue of an appropriate sanction, the board agreed with the ODC that the facts of this case are most similar to those of *Sterling*, if not more egregious. Respondent went to his wife's home at 2:00 a.m., not 11:00 p.m. Once at the house, he left his minor, sleeping daughters unattended in his vehicle. He did not attempt to telephone his wife or knock on a door or window before entering the home.

14

Instead, with no warning, respondent kicked open the locked front door, breaking the door frame, and stormed in the house. He then pushed his wife aside and attacked and beat her male guest who was approximately ten inches shorter and 100 pounds lighter than respondent.[3]

Respondent left, but then returned to his wife's home two more times. When he left the first time, he went to his home and awakened his daughters and put them to bed. However, he then gathered up his wife's clothing and belongings that were still in his home and put them in his SUV. He awakened his young daughters again and put them back in the SUV. He then returned to his wife's home approximately 45 minutes after he had left and dumped her belongings in the driveway. He left again, but returned very shortly thereafter to try to get his son's soccer equipment out of his wife's vehicle. When his wife would not give him the keys to the vehicle and despite her physical attempts to stop him from doing so, respondent first attempted to break his wife's car window with a recycling bin and then succeeded in breaking the window with a cinder block. At this point the minor children had awakened in the SUV and were crying as a result of hearing their parents arguing. It is believed they were not in a position to see their parents arguing or to see respondent break the car window.

In *Cardenas*, cited by the hearing committee, the respondent committed a battery on his estranged wife but did not cause any serious injury. The couple's minor children were present in the house when the incident happened, leading to the respondent's conviction of one misdemeanor count of domestic abuse battery (child endangerment). In suspending the respondent for one year, with six months deferred, followed by a two-year period of supervised probation with conditions, the court stated that the respondent's conduct "is most similar to *Sterling*, although less

---

[3] The guest was also ill with a fever at the time.

egregious given that Mr. Sterling was convicted of a felony criminal charge in connection with his domestic incident, and the disciplinary proceeding involved additional lawyer misconduct not seen in the instant matter."

In the present matter, while the district attorney chose not to prosecute respondent, he has admitted that he committed the crime of unauthorized entry of an inhabited dwelling, the same felony to which Mr. Sterling pleaded guilty and received significant criminal penalties. Additionally, respondent has admitted that his conduct satisfied the elements of three misdemeanor crimes: domestic abuse battery, simple battery, and simple criminal damage to property. Further, he left his two small daughters asleep in a car alone at 2:00 a.m. to commit these crimes. Then, after putting them in their beds at home, he awakened them to take them out again so he could further harass his wife. Such misconduct is more on the level of that in *Sterling*, even considering Mr. Sterling's additional offenses, than that in *Cardenas*. Furthermore, both Mr. Sterling and Mr. Cardenas had already been subjected to more serious criminal penalties than respondent.

In *In re: Bowman*, 12-2410 (La. 3/9/13), 111 So. 3d 317, the respondent and his ex-wife were very recently divorced and, under court order, they shared joint custody of their children on a rotating weekly schedule. The respondent went to the former matrimonial domicile to pick up his two daughters for visitation. He and his ex-wife still owned the house and it was not subject to any use or occupancy judgment. His former wife informed the respondent that he could pick up his twelve-year-old daughter, but that his eight-year-old daughter did not want to go and his ex-wife would not make her go. The respondent then pushed past his ex-wife to attempt to enter the house. As his ex-wife closed the door to prevent him from entering, the respondent pushed her with his arm, causing her to stumble backwards against the door. He then pinned her against the door by placing his forearm against her throat and chest and drew back his left hand in a fist as if he was going to punch her, but

16

he did not actually strike her with his fist. He then yelled into the house for his two daughters to come with him. At that point, his ex-wife's boyfriend, a state trooper who was at the house, came to the door and physically maneuvered the respondent outside. They exchanged words on the porch and the respondent went home. In response to a 911 call from the twelve-year-old daughter, the police investigated and found that the ex-wife had visible red marks and abrasions on her neck and chest from being pushed into the door. The daughter told police she witnessed the respondent pin her mother against the door.

The respondent was arrested and charged with domestic abuse battery. His ex-wife later requested the criminal charges be dismissed, but the district attorney's office declined to forego prosecution. Following a trial, the respondent was found guilty as charged. The judge in the criminal proceeding found that while the respondent's ex-wife had willfully disobeyed a custody order, which actually triggered the heated exchange and ultimate incident, she was not the aggressor or instigator in the incident. The respondent was ordered to pay a fine and court costs and was given a suspended sentence of sixty days in jail. He was placed on probation for six months with conditions including community service and completion of a domestic abuse prevention program. The conviction was subsequently set aside upon the respondent's satisfactory completion of his probation.

In the disciplinary matter, relying primarily on *Cardenas*, the board recommended Mr. Bowman be suspended for one year, with six months deferred, followed by a two-year period of probation. However, the court suspended Mr. Bowman for six months, with all but thirty days deferred. In imposing this sanction, the court observed that "there is a considerable range of sanctions imposed upon attorneys who have been found to engage in conduct involving physical violence" and that "[t]his divergence suggests that the determination of an appropriate sanction

17

in this area may turn on the unique facts and circumstances of each case, making it difficult to draw much guidance from prior jurisprudence."

The board found that the conduct of respondent herein is more egregious than that of Mr. Bowman. Respondent went to his wife's home unannounced in the wee hours of the morning, broke down the door, shoved her, and beat her guest. He then returned twice, smashing a car window with a cinder block on the second return. He engaged in this behavior with his two minor children in the vehicle. While Mr. Bowman's behavior was not justified, he went to pick up his children in accordance with the court visitation order and was provoked by his ex-wife when she refused to allow him to pick up his daughter in violation of the court ordered schedule and refused to allow him to enter the home which he still co-owned. Further, Mr. Bowman committed only one misdemeanor offense and the criminal proceedings and penalties were more severe for that offense than the intervention program respondent here was allowed to pursue after having committed what he has admitted were four crimes, including one felony.

Considering these cases, the board concluded that a two-year suspension is the most appropriate sanction for respondent's misconduct based upon the totality of the evidence presented. Accordingly, the board recommended that respondent be suspended from the practice of law for two years, and be assessed with the costs and expenses of this matter. Two board members dissented and would adopt the recommendation of the hearing committee that respondent be suspended from the practice of law for one year and one day.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

Respondent's conduct satisfies the elements of the felony offense of unauthorized entry of an inhabited dwelling, as well as three misdemeanor offenses: domestic abuse battery, simple battery, and simple criminal damage to property. Respondent has stipulated to this misconduct and to his violation of Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct. Therefore, the sole issue to be decided by this court is the appropriate measure of discipline to be imposed.

In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

We find that respondent violated duties owed to the public and the legal profession. By definition, his offenses involved intentional acts. Respondent caused physical injuries to his wife and her guest and property damage to her home and vehicle. His actions also created the potential for even more serious injuries, or even

19

death, to his wife, her guest, or himself, and the potential for harm to his children. Furthermore, respondent's conduct and the resulting publicity reflect adversely on the legal profession. Considering the ABA's *Standards for Imposing Lawyer Sanctions*, the applicable baseline sanction in this matter is suspension.

The following aggravating factors are supported by the record: a selfish motive, deceptive practices during the disciplinary process, substantial experience in the practice of law, and illegal conduct. The record supports the following mitigating factors: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct, a cooperative attitude toward the disciplinary proceedings, and remorse. For the reasons set forth by the board in its report, we agree that there is not clear and convincing evidence of the mitigating factor of mental disability.

Regarding the issue of an appropriate sanction, we agree with the board that there are certain factual similarities between the criminal conduct in this matter and that seen in the *Sterling* case. Nevertheless, under the unique facts and circumstances of this case, we do not find that the two-year suspension we imposed in *Sterling* is warranted here, particularly as this case does not involve the additional attorney misconduct seen in that matter. Rather, we find the appropriate sanction for respondent's misconduct is a one-year suspension from the practice of law.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that David Gardner deBlieux, Louisiana Bar Roll number 29141, be and he hereby is suspended from the practice of law for a period of one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme

20

Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**No. 2019-B-1515**

**IN RE: DAVID GARDNER deBLIEUX**

**ATTORNEY DISCIPLINARY PROCEEDING**

**JOHNSON, Chief Justice, dissents**.

Given the seriousness of respondent's behavior, I would accept the Disciplinary Board's recommendation that respondent be suspended from the practice of law for two years.

As the facts set out in the Per Curiam demonstrate, respondent acted intentionally, and his actions resulted in serious harm, including property damage and physical personal injury. Moreover, the potential for more serious harm was great given respondent forcibly entered into a house which was occupied at the time. I find it even more troubling that these events took place at approximately 2:00 a.m. with respondent's minor children present. Considering respondent's criminal actions satisfied the elements of a felony (unauthorized entry of an inhabited dwelling), as well as three misdemeanor offenses (domestic abuse battery, simple battery, and simple criminal damage to property), I find the discipline imposed by the majority of this court too lenient. Thus, I respectfully dissent.

**SUPREME COURT OF LOUISIANA**

**No. 2019-B-01515**

**IN RE: DAVID GARDNER DEBLIEUX**

Attorney Disciplinary Proceeding

**CRICHTON, J., concurs in part and dissents in part and assigns reasons:**

While I agree with the majority's finding that respondent has violated the Rules of Professional Conduct as charged, I disagree with the sanction imposed, as I find it unduly lenient.

The facts surrounding the domestic incident as described in the Court's opinion give me great pause. This highly charged personal and physical confrontation in the middle of the night, while respondent's young children were in his nearby vehicle, could have resulted in grave bodily injury or even death. As noted in the opinion, respondent himself admits that his actions satisfy the elements of the felony crime of unauthorized entry of an inhabited dwelling, and the misdemeanor crimes of domestic abuse battery, simple battery, and simple criminal damage to property. Such intentional and violent behavior falls far short of that expected in our profession.

In my view, moreover, the seemingly mysterious circumstances surrounding respondent's departure from his previous employment at the East Baton Rouge District Attorney's office are troublesome. Specifically, I find compelling the aggravating factor, as noted by the hearing committee and the board, that the record reveals some inconsistencies in that respondent may not have been completely forthright regarding this issue. As a result, I cannot ignore the committee's conclusion that there were deceptive practices during the disciplinary process, which ultimately contributed to its recommendation that respondent be suspended for a

1

year and a day. Although it is commendable that respondent has complied with his pre-trial intervention program, I agree with the hearing committee that a suspension of one year and one day will provide the necessary length of time respondent needs to continue his on-going therapy and compliance thereof. That term would also provide this court, upon petition by the respondent, the ability to evaluate respondent's character and fitness to reengage in the noble practice of law. *See* La. Sup. Ct. R. XIX, §24 ("A disbarred lawyer or a suspended lawyer who has served an active suspension of more than one year shall be reinstated or readmitted only upon on order of the court.").

**SUPREME COURT OF LOUISIANA**

**No. 2019-B-01515**

**IN RE: DAVID GARDNER DEBLIEUX**

Attorney Disciplinary Proceeding

**CRAIN, J.**, concurs in part and dissents in part for the reasons assigned by

Johnson, C.J.